# EXHIBIT 30

Motion to Compel

1

Pages:    1-84

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                          SUPERIOR COURT DEPARTMENT
                                         OF THE TRIAL COURT

* * * * * * * * * * * * * * * *
DENNIS W. BURKE, M.D.,
        Plaintiff
v.                                    Docket No. 1784CV02876

THE GENERAL HOSPITAL CORP.
DOING BUSINESS AS MASSACHUSETTS
GENERAL HOSPITAL, et al.,
        Defendants
* * * * * * * * * * * * * * * *

               MOTION TO COMPEL
      BEFORE THE HONORABLE ROSEMARY CONNOLLY

APPEARANCES:
For the Plaintiff:
Burns & Levinson LLP
125 Summer Street
Boston, Massachusetts 02110
By:  Ellen Jane Zucker, Esq.
     Aaron S. Welo, Esq.

For the Defendants:
Martin Magnuson McCarthy & Kenney
101 Merrimac Street
Boston, Massachusetts  02114
By:  Edward F. Mahoney, Esq.

For the Defendant Massachusetts
General Physicians Organization:
Hamel Marcin Dunn Reardon & Shea
24 Federal Street, 11th Floor
Boston, Massachusetts 02110
By:  Brian Sopp, Esq.

                        Boston, Massachusetts
                        Room 1008
                        April 30, 2019

     Lisa Cimmino
     Approved Court Transcriber

```
 1    the information that Your Honor is --
 2        THE COURT:  So why didn't Mass. General come in,
 3    when they first realized this subpoena was going to
 4    Simmons, to lodge whatever objections they wanted then?
 5    Why did it wait so long?
 6        MR. MAHONEY:  So what occurred, Judge, is that when
 7    the doc- -- we didn't know what was in the documents
 8    that were requested from Simmons.
 9        THE COURT:  Did you check to see if any of these
10    documents overlap with documents either you had either
11    produced or were also withholding on the basis of
12    privilege?
13        MR. MAHONEY:  So we were not -- so I don't believe
14    -- and again, there's so many documents in this case.  I
15    don't -- the documents we produced from Ms. Minehan were
16    documents that were between she and leadership, right,
17    and that's how plaintiff understood that there were
18    documents.
19        In terms of whether there were documents from Ms.
20    Minehan to Office of General Counsel, that's not
21    something that we had as part of our overall relativity
22    search function.
23        THE COURT:  Or she could have been c.c.'d -- for
24    example, on an email involving Slavin, Minehan could
25    have been c.c.'d on that, and you produced the Slavin
```

```
 1   one, and this is actually a duplicate, for example,
 2   hypothetically --
 3        MR. MAHONEY:  Yeah.
 4        THE COURT:  -- this is really a duplicate of that
 5   one.  Did you look at any of that to see if you've
 6   produced it in one place and now claiming it is
 7   privileged in another?
 8        MR. MAHONEY:  I don't think that would be the case,
 9   Judge, that that would occur, because if it was withheld
10   as part of this larger production, I think it would also
11   consistently be withheld as with regard to the Simmons
12   documents.  So I don't see --
13        THE COURT:  Well, that would be good, that would be
14   good, that would be consistent --
15        MR. MAHONEY:  Well, we tried --
16        THE COURT:  -- but I am suspicious, given the very
17   loose grasp Mass. General seems to have on what's
18   produced, what was searched, what wasn't searched, who
19   the document-holders were, how the preservation order
20   was actually put into effect.  That causes the Court
21   great concern.
22        MR. MAHONEY:  In terms of the one area that I'm not
23   a hundred-percent sure is on the follow-up of the
24   preservation letter that went in September of 2015.
25        THE COURT:  And as I understand it, you weren't
```

```
 1  involved in the first round of production.
 2       MR. MAHONEY:  Well, I was around -- I was involved
 3  -- unfortunately, when I got involved, the production
 4  was well overdue, and so I was involved to the extent of
 5  trying to get the documents initially produced, so I
 6  was.
 7       THE COURT:  All right.  So, I'm sorry, I
 8  interrupted you.  You were trying to explain to me why
 9  Mass. General waited three or four months before lodging
10  these objections.
11       MR. MAHONEY:  Right.  So when the subpoena was
12  issued, we were in touch with Simmons to say, We don't
13  know what's there, but it may be that there are
14  attorney/client documents there, from our perspective;
15  we don't know what's there.  Simmons hadn't gone through
16  the documents at all at that point in time.  This was --
17       THE COURT:  Why didn't you give notice to the
18  plaintiff that you were going to do -- that you were
19  going to -- that your intention was to lodge objections?
20       MR. MAHONEY:  At that time, we didn't know that we
21  were.  We didn't know that there were any documents that
22  were privileged at that point in time.  Simmons hadn't
23  even looked at them at that point.  And so what happened
24  the next step was that at some point in time, Simmons
25  said, We have all the documents, and there seem to be
```

Motion to Compel

18

1   documents or there may be documents that are privileged.
2   And so they said, If you want to assert the privilege,
3   in our view they're privileged, but if you want to
4   assert the privilege, you should let us know that.
5       So we were provided with the documents or went over
6   the documents -- this is through counsel of Simmons --
7   to review them to say, are there any that are
8   privileged. And so that was done I think in either late
9   February or early March, after Simmons had gathered the
10  documents.
11      THE COURT: Was this outside counsel for Simmons
12  that --
13      MR. MAHONEY: Yes.
14      THE COURT: Okay. And do you know whether outside
15  counsel for Simmons looked at the email that they were
16  going to produce in response to the subpoena before
17  contacting you to say that there may be some documents
18  here you want to assert privilege on?
19      MR. MAHONEY: So I don't know that they -- I don't
20  believe they did, but I can't say that with one-hundred-
21  percent certainty; in other words, whether they reviewed
22  the documents. I don't --
23      THE COURT: And there's no claim here that counsel,
24  outside counsel for Simmons is part of the
25  attorney/client relationship between Ms. Minehan and

Motion to Compel

64

1  until way into the process here, until April,
2  apparently, when they filed their cross-motion for a
3  protective order.  That's one.
4       Two, Simmons had to have looked at this in order
5  to, in good faith, raise in their objections that they
6  were relying on attorney/client privilege.  So they had
7  to have looked at it, and then they kicked it over to
8  Mass. General.
9       So it seems to me, just on a straightforward --
10 putting aside the server issue, which is an interesting
11 legal argument, just on the straightforward waiver
12 argument, I think you lose.
13      MR. MAHONEY:  Well, Your Honor, if that's the case,
14 if -- let's assume the Simmons lawyer looked at it, and
15 as I mentioned before, the exact areas that were
16 attorney/client were indicated by Mass. General, because
17 Simmons --
18      THE COURT:  Then how is it Simmons wrote and had a
19 lawyer sign their response if they weren't the ones who
20 did it?  That puts them in a bind.
21      MR. MAHONEY:  Right.  My understanding is, what
22 happened is, the documents that are privileged, from
23 Mass. General's standpoint, were pointed out to them
24 with stickies on them and the redactions were made from
25 that, not that someone read them to make that

1  determination.
2       But putting that aside, if someone were to -- if
3  Simmons looked at them in trying to respond to the
4  document requests, their documents, if they looked at
5  them, I don't see how that waives an attorney/client
6  privilege if they're simply responding to a subpoena
7  that's been issued.
8       THE COURT:  But it's a subpoena issued to them
9  about attorney/client privilege that isn't their --
10 they're neither client and it's not their attorney.  So
11 I don't see that.
12      And even if you wanted to preserve the
13 attorney/client issue to live to fight another day, then
14 I would have expected I would have had a complete
15 privilege log that would have allowed us to have a
16 reasonable discussion on that, and that's not what this
17 is.  This is, you know, this is just woefully
18 inadequate.  And I don't want to hear today what you're
19 going to do, that could have been done last week, last
20 month, two months, last year.
21      So I appreciate, Mr. Mahoney, you've come in here
22 late.  I appreciate that you've spent a lot of efforts,
23 it sounds like it hasn't necessarily been efficient
24 efforts, in corralling discovery here.  And I have to
25 say, and I think I'm repeating myself now, but I have a

```
 1   Court's ruling, we're at FTR starting at 2:48.  So this
 2   oral order will be in lieu of a written order.  As I
 3   say, you can order a copy of the transcript from FTR.
 4           The Court notes that this is at least the third
 5   discovery dispute that we have encountered involving
 6   this case.  Some of the issues permeate all of these
 7   discovery disputes, and that is, namely, the scope of
 8   the search that's been done and the thoroughness of that
 9   search and the thoroughness of any privilege logs to
10   help the defendants meet their burden to show that what
11   they're withholding is, indeed, privileged.
12           With respect to this matter, it involves a subpoena
13   that the plaintiff sent to Simmons college seeking
14   various documents that Ms. Minehan had either sent or
15   received over the Simmons internet and using her Simmons
16   email.  Ms. Minehan was and is, I understand, a member
17   of the board of trustees at Mass. General, and it is in
18   that capacity that she did have relevant communications
19   during the relevant time period concerning Dr. Burke.
20           In response to the subpoena duces tecum, Simmons
21   did produce some documents; I understand it's about 370.
22   And in their response in March of 2019, they asserted an
23   attorney/client privilege as a reason for withholding
24   some other documents.
25           The Court notes that Simmons is neither the client
```

1  nor the attorney involved in the communications between
2  Ms. Minehan and Mass. General and Mass. General's either
3  in-house counsel or outside counsel.  So in order -- the
4  Court finds that in order for Simmons to have raised, in
5  good faith, under Rule 11, the objection of
6  attorney/client privilege, that they had to have looked
7  at the alleged privileged communications.  And that is
8  the first basis on which the Court finds that there was
9  a waiver of any documents deemed to have been protected
10 by the attorney/client privilege.
11       The second waiver is in the fact that the
12 chronology here reveals that though the defendants
13 received notice of the summons that plaintiff sent to
14 Simmons either in late 2018, December 2018 or early
15 January 2019, nothing was done or said, they didn't
16 interpose -- defendants didn't interpose a motion to
17 quash or seek any kind of protective order of the
18 subpoena, but waited, and it wasn't until the time of
19 production that it was revealed to the plaintiffs that
20 Simmons was essentially putting down a place marker on
21 the attorney/client privilege and was turning it over to
22 Mass. General then and their counsel to litigate the
23 nature of the attorney/client privilege.
24       So the Court finds the second basis of the waiver
25 is, Mass. General didn't come in sooner, even though

```
 1   they had knowledge of the subpoena, didn't come in
 2   sooner, didn't try to preserve its rights, but waited
 3   until the plaintiff filed their motion seeking to compel
 4   the documents and then cross-moved -- in April of 2019,
 5   the defendants then cross-moved, seeking a protective
 6   order.  So the Court finds the second grounds for waiver
 7   is not more promptly responding and lodging their
 8   objections much earlier on in this process.
 9        The third basis for a waiver argument is, to the
10   extent that Mass. General did seek to protect any of
11   these documents that are being withheld from the Simmons
12   server on the grounds of attorney/client privilege, then
13   it was incumbent upon them to have a detailed privilege
14   log.  And the privilege log provided, which is attached
15   as Exhibit B to the General Hospital Corp. d/b/a Mass.
16   General Hospital's Opposition to Plaintiff's Motion to
17   Compel Production of Documents Responsive to Subpoena
18   Duces Tecum Served on Simmons University and Cross-
19   Motion for Protective Order, that motion being dated --
20   hold on -- well, there's no date on it.  The certificate
21   of service on it says it's the 8th day of April, 2019.
22        Exhibit B to that motion is a page and a third that
23   purports to be a privilege log that identifies the
24   documents being withheld on the basis of the
25   attorney/client privilege.  And the privilege log
```

1  contains three categories -- three categories: one is
2  "Document Type," second is "Privilege," the third is
3  "Category Description."  The privilege log does not
4  include the to, the from, the c.c.'s, the date and any
5  kind of identifying information, whether a Bates number
6  or otherwise, of the document, with a brief description
7  of each document, to permit an inquiry into whether the
8  attorney/client privilege, in fact, pertains to the
9  whole or part of each document so being withheld.  Court
10 understands that it's approximately a hundred or so
11 documents that are being withheld, so it's not too
12 voluminous to produce such a privilege log.
13       So it's on those bases that the Court, in its
14 discretion, is finding that there is a waiver of any
15 privilege so asserted by the defendants, either
16 attorney/client privilege or work product.  The Court
17 notes, further, that while it is a significant decision
18 by this Court to find that something as sacrosanct as
19 the attorney/client privilege is waived, on this record,
20 the Court finds that the defendants' delays and just
21 straight waiver allowing Simmons to look at these
22 documents, and thirdly, not providing adequate privilege
23 logs on this has caused the Court to take the very
24 serious step of finding a waiver of the attorney/client
25 privilege here.

Motion to Compel

75

1    So the Court is allowing the plaintiff's motion to
2 compel all of the documents that have been sought
3 pursuant to the subpoena to Simmons College within
4 fourteen business days of today's date.
5    Second of all, the Court is ordering the defendant
6 to produce a detailed log of any other documents from
7 prior productions, not the Simmons, because those are
8 all going to be produced, but any other production that
9 involves attorney/client or work product, the Court is
10 now ordering the defendants to produce a detailed log
11 that has the to, the from, the c.c.'s, some sort of
12 identifying document or date as to each individual
13 document being withheld and a brief description of the
14 subject matter to permit the plaintiff to test the
15 validity of those documents being withheld.
16    Thirdly, the Court is ordering the defendants to
17 have someone from Mass. General's in-house counsel file
18 an affidavit with the Court, and that affidavit is going
19 to identify all of the people who received -- identify
20 all of the people who've received the preservation
21 notice, it's going to identify what action the Mass.
22 General ordered those notice-holders to do with respect
23 to any documents they had that were responsive to the
24 notice, what follow-up, and the affidavit's going to
25 include what action and when it was taken to search for

1    responsive information for the interrogatories and
2    document requests that have been propounded thus far in
3    this case.  That affidavit shall be filed with the court
4    and served on plaintiff no later than May 31, 2019.
5         So just to recap, the plaintiff's motion to compel
6    is allowed.  The Court finds a waiver of the late
7    assertion of attorney/client privilege.  Two, Mass.
8    General is going to produce a detailed log for any
9    documents for which it claims either attorney/client or
10   work product privilege.  That log is going to have the
11   columns of to, from, c.c., a date or some sort of
12   identifying number associated with each document, and a
13   brief description of that document.  And three, by May
14   30th -- did I say 31st?
15        THE CLERK:  31st.
16        THE COURT:  May 31st of 2019.  Someone from the
17   general counsel's office at Mass. General is going to
18   produce for the Court, and a copy to plaintiff, an
19   affidavit identifying all the people to whom
20   preservation notices were sent and what action was taken
21   by Mass. General to make sure that the preservation
22   notices were followed and then what action and when it
23   was taken to conduct a search in response for
24   discoverable information and documents in response to
25   the plaintiff's request for production of documents and